UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMY RICHARD HOWELL | CIVIL ACTION |
| VERSUS | NO: 12-0293 |
| HILLCORP ENERGY COMPANY, ET AL. | SECTION: "R" (4) |

**ORDER**

Before the Court is Defendants, Avante Services, LLC, ("Avante") Sparrows Offshore, LLC, ("Sparrows") and Hilcorp Energy Company's ("Hillcorp") (collectively, "Defendants") **Joint Motion to Compel Medical Examination Under Fed R. Civ. P. 35 (R. Doc. 164)**, seeking an Order from this Court compelling Abigail Jade Kliebert, ("Abigail") a seven year-old girl, to undergo a medical examination to determine her biological relationship to the decedent, Philip Kliebert, ("Philip"). The motion is opposed (R. Doc. 168). The motion was heard by oral argument on Wednesday, March 13, 2013.[1]

**I.    Background**

This is a maritime personal injury and wrongful death action arising in connection with accident on an offshore drilling platform, which resulted in the death of Philip, a 28 year-old "rigger." (R. Doc. 1).[2] In her Complaint, Howell alleges that Defendants failed to properly manage, operate, and supervise the site, which led to his death. *Id.* at 3. Howell, who was briefly married to Philip, brought suit on behalf of two minor children, Cameron Joseph Kliebert, ("Cameron") and Abigail, for wrongful death and survivorship. *Id.* Defendants' various answers deny liability. (R.

---

[1]The motion was originally noticed for submission on February 27, 2013, but was continued until March 13, 2013. (R. Doc. 175).

[2]Although Howell cannot recover for wrongful death in this case, she alleges that she is the "natural tutrix" of minor children Cameron Kliebert and Abigail Kliebert, who are Philip Kliebert's children. (R. Doc. 1, pp. 8-9).

Docs. 5, 7, 14).[3]  The issue before the Court is Defendants' standing to challenge Philip's paternity of Abigail, and if so, whether the test they propose is permissible under the Federal Rules.

Defendants argue that during the discovery phase of this case, the biological relationship between Philip, Cameron, and Abigail came into question.  (R. Doc. 164-1, p. 3).  Specifically, Philip and Howell were married on March 18, 2006.  *Id.*  During the course of their relationship, at times before and during the marriage, three children were born: Cameron (2003), Abigail (2005), and Nicolas (2009).  In June 2010, Howell filed for a "no fault" divorce, and Philip filed a countersuit against Howell for a divorce on account of adultery.  *Id.* at 4.  In Philip's divorce filing, he states that all three children were born of the marriage, and requested joint custody of the children. (R .Doc. 164-4, p. 3).  However, he explicitly requested a paternity test on the youngest child, Nicolas, due to Howell's "extramarital affairs."  *Id.*  As a result of the paternity test, Howell and Philip entered into a consent judgment wherein Howell agreed that Nicolas was not Philip's child.  *Id.*  A paternity test was performed on Cameron, which confirmed that Philip was his father. (Joffrion Deposition, p. 48).[4]  However, no paternity test was ever requested for Abigail; Philip is listed as Abigail's father on her birth certificate.  (R. Docs. 164-7, p. 4; 168-1, p. 1).

Howell argued at her deposition in this case that the alleged adulterous conduct occurred only for a six-month period in 2009 during which she and Philip were separated, Philip's divorce filing indicated that the adulterous conduct reached back to 2007.  *Id.*  Defendants also argue that Philip's mother, Linda Joffrion, ("Joffrion") testified at her deposition that Howell's infidelity was ongoing during the entirety of her relationship with Philip, and have on the Court's request submitted the entirety of Joffrion's deposition into the record.  *Id.*

After Joffrion's deposition, Defendants contacted Howell, to attempt to schedule paternity tests for Cameron and Abigail.  (R. Doc. 164-2, p. 1).  However, Howell stated that "we will

---

[3]A fourth Defendant, Alliance Oilfield Services, LLC, ("Alliance") has also filed a Complaint.  Alliance did not join in the instant motion and for purposes of this Order, "Defendants" does not pertain to it.

[4]As noted below, the deposition transcript was provided to all parties and the Court after oral argument on the instant motion. This submission was made at the Court's request.

2

absolutely not agree to any paternity testing of either child." *Id.* The instant motion, which requests a paternity test solely for Abigail, followed.

## II.     Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Id.* The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Rule 35 provides in pertinent part that "[t]he court where the action is pending may order a party whose mental or physical condition - including blood group - is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Rule 35(a)(1). The court may issue such an order "on motion for good cause *and upon notice to all parties* and the person to be examined" which specifies "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." *Id.* at 35(a)(2) (emphasis added).

The Court uses a two-part test to determine whether a Rule 35(a) motion will be granted. First, the moving party must show that the physical or mental state of the party to be examined must be in controversy. Second, the moving party must show good cause as to why the motion should be granted. *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964). "Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Id.* at 118. A "plaintiff in a negligence action who asserts mental or physical

3

injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.* at 119.[5]

Rule 35(a) endows the district court with "wide discretion" in determining whether a physical examination should be ordered, although the Rule should be interpreted "liberally . . . in favor of discovery." *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 207 & n.1 (N.D. Tex. 1996).

"A parent or guardian suing to recover for injuries to a minor may be ordered to produce the minor for examination." Committee Note to 1970 Amendment to 35(a), 48 F.R.D. at 529. Accordingly, Federal courts have found "good cause" for allowing Rule 35(a) paternity tests of children at the request of insurance companies, where the right to recover in wrongful death cases hinged on the filial relationship between parent and child. *See Smith v. Serviceman's Group Life Insurance*, 124 F.R.D. 195, 196 (N.D. Ind. 1989) (ordering blood test in insurance policy dispute).

## III.  Analysis

### A.  Standing and Presumption of Paternity

In support of their motion, Defendants argue that Abigail's standing to seek recovery on either of her causes of action hinges on her falling within the "class of persons" under the Louisiana wrongful death statutes, La. Rev. Stat. Ann. art § 2315, which includes "children." Defendants also argue that because Abigail was born prior to the marriage, Philip cannot be presumed to be her father. (R. Doc. 164-1, p. 6).[6] Defendants further argue that even if Philip's paternity can be somehow "presumed" in this case, because filiation is an "essential" element of Abigail's recovery, Defendants argue that they are entitled to discover evidence. *Id.* at 7.

In opposition, Howell argues that Philip is "presumed" to be Abigail's father for purposes

---

[5]Rule 35(a) also requires that the person examined must be a party to the case. *See Shlagenhauf*, 379 U.S. at 115 & n.12 (citing cases). Here, however, there is no doubt that Abigail is a party to the case insofar as she seeks to recover as one of Philip's children.

[6]In her opposition, Howell attaches a copy of Abigail's birth certificate, which indicates that she was born on September 1, 2005. (R. Doc. 168-1, p. 1).

of "her having the requisite standing in this matter." (R. Doc. 168, p. 4). Howell argues that based upon Civil Code Ann. arts. 195 and 196, Philip is presumed to be Abigail's father for purposes of standing, and as such her "biological relationship" is not in controversy. (R. Doc. 168, p. 4).

Howell supports this position by indicating that Philip never denied paternity of Abigail, and Philip is listed on her birth certificate. *Id.* at 2.[7] Howell further argues that although Philip contested the paternity of Nicolas during his divorce proceedings, he never contested his affiliation to Abigail and in fact agreed to pay child support for her. *See id.* at 3. Howell further argues the Joffrion testimony offered by Defendants in support of their contention that Howell has given "inconsistent" testimony is inapposite, as Joffrion's testimony pertains to Cameron and Nicolas, but not to Abigail. *Id.* at 4. Howell argues that since Philip is presumed to be Abigail's father under the Louisiana Civil Code, her "physical condition" is not in controversy and no Rule 35(a) motion is warranted. *Id.*

At oral argument, Defendants did not contest that Philip would be presumed to be Abigail's father for purposes of paternity. However, this issue in this case is whether the legal "presumption" prohibits Avante from challenging paternity for purposes of a wrongful death suit.

### 1.  Standing in Louisiana Wrongful Death Suits

As a threshold matter, any party bringing suit must have standing to do so, and the Fifth Circuit has instructed district courts to evaluate state law concepts of paternity to establish standing in wrongful death and survivorship actions. *See Pluet v. Frasier*, 355 F.3d 381, 383-84 (5th Cir. 2004); *Rosado v. Deters*, 5 F.3d 119, 123-24 (5th Cir. 1993) (applying Louisiana wrongful death statute); *Batiste v. Theriot*, 2010 WL 2836301, at *2 (W.D. La. July 15, 2010) (applying *Pluet* to Louisiana wrongful death action).[8] In Louisiana, entitlement to recovery in wrongful death actions is governed by La. Civ. Code Ann Arts. § 2315.1 (survival action) and § 2315.2 (wrongful death action). *Lollis v. Concordia Parish*, 2010 WL 454721, at *5 (W.D. La. Feb. 9, 2010). Both code

---

[7] Howell has attached Abigail's birth certificate to her opposition, which lists Philip as Abigail's father. (R. Doc. 168-1, p. 1).

[8] *Theriot* does not make clear whether defendants were sued under 42 U.S.C. § 1981, § 1983, or § 1988; however, in this diversity case, the impact of state tort law must apply even more conclusively. *See Jenkins v. Collette*, 335 F. Supp. 47, 48 (E.D. La. 1971) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

articles state that the "child or children of the deceased" may bring suit. *See* Arts. § 2315.1A(1), § 2315.2A(1). Because the Louisiana Civil Code is a general system of law entitled to holistic interpretation, Louisiana courts "have repeatedly applied the filiation provisions of the Code to determine the proper beneficiaries for wrongful death and survival actions." *Udomeh v. Joseph*, 103 So.3d 343, 347 (La. 2012).

However, as the wrongful death statutes are part of Louisiana *tort* law, and not Louisiana *succession* law. *Hernandez v. State, ex rel. Dep't of Transportation and Development*, 841 So.2d 808 (La. App. 4 Cir. 2002). As such, "a biological relationship between the tort victim and the plaintiff child is a critical element of a claim arising under" § 2315. *Henderson v. Turner*, 2012 WL 3109482, at *3 (M.D. La. July 31, 2012) (citing *Turner v. Busby*, 883 So.2d 412, 418 (La. 2004)). Indeed, proof of a biological relationship is a prerequisite to entitlement to suit. *Warren v. Richard*, 296 So.2d 813, 814 (La. 1974); *Jenkins v. Mangano Corp.*, 774 So.2d 101, 103 (La. 2000). By contrast, entitlement to bring suit is not satisfied by the legal "fiction" of paternity. *Turner*, 883 So.2d at 418; *Gnagie v. Dep't of Health and Human Resources*, 603 So.2d 206, (La. App. 1 Cir. 1992).[9]

### 2. Whether Abigail is a Child Under Articles 3506, 195, and 196

To be a "child," Abigail must have been born "of the marriage . . . adopted . . . [or] whose filiation to the parent has been established in a manner provided by law." La. Civ. Code Art. § 3506(8). Louisiana law provides that "[t]he husband of the mother is presumed to be the father of a child born during the marriage or within three hundred days from the date of the termination of the marriage." La. Civ. Code Ann. art. 185. In this case Abigail was born on September 1, 2005, and the marriage between Howell and Phillip did not commence until March 18, 2006. (R. Docs. 164-4, p. 2; 168-1, p. 1). Therefore, Phillip is not presumed to be Abigail's father under Art. §

---

[9]Once a biological relationship is established, the distinction between "legitimate" and "illegitimate" children is relevant only to the extent that an illegitimate child is required to "prove, by clear and convincing evidence, that the parent informally acknowledged the child during his lifetime." *Jenkins*, 774 So.2d at 103; *see Etcher v. Neumann*, 806 So.2d 826, 839 (La. App. 1 Cir. 2001) (finding that fact that child had "legal" father did not preclude tort recovery by "biological" father upon showing of proof); *Jenkins*, 335 F. Supp. at 48.

3506(8).

In support of her argument that Abigail's filiation has been established "in a manner provided by law," Howell points to Article 195. Thereunder, "[a] man who marries the mother of a child not filiated to another man *and* who, with the concurrence of the mother, acknowledges the child by *authentic act* or *signing the birth certificate* is presumed to be the father of that child." La. Civ. Code Ann. art. 195 (emphasis added).[10] The Louisiana Supreme Court has explicitly stated that paternity is not established merely when a man "is listed as the father on [a child's] birth certificate," but instead is only established by "signing" the birth certificate. *Udomeh*, 103 So.3d at 347 n.1.[11] Here, although Howell has produced a copy of the birth certificate with Kliebert's name on it, Kliebert has not signed the birth certificate. Therefore, the fact that his name appears on the birth certificate does not satisfy Article 195.

Moreover, there is no indication that Kliebert undertook an "authentic act." Such an act "is a writing executed before a notary public . . . in the presence of two witnesses, and signed by each party who executed it." La. Civ. Code Ann. Art. 1833; *Succession of Robinson*, 654 So.2d 682, 685 (La. 1995) (citing La. Civ. Code Ann. art. 1833). Further, although Art. 195 also provides that Philip could have acknowledged Abigail by specifying the same in his marriage contract with Howell, there is no indication that he signed an Acknowledgment of Paternity Affidavit, filed with the Putative Father Registry, or performed any other "authentic act" which supports her contention that Abigail's paternity is presumed.

Howell also argues that Article 196 supports her presumption argument. Article 196 states that "[a] man may, by authentic act or by signing the birth certificate, acknowledge a child not filiated to another man. The acknowledgment creates a presumption that the man who

---

[10] However, "[o]nly a father may formally acknowledge an illegitimate child by having his name placed on the child's birth certificate," and an act placing a non-biological father's name on a birth certificate is "without legal effect." *McKinley v. McKinley*, 631 So.2d 45, 48 (La. App. 2d Cir. 1994); *State ex rel. A.L.*, 34 So.3d 416, 419 (La. App. 3d Cir. 2010) (citing *McKinley*).

[11] Although *Udomeh* was interpreting Article 196, both Article 195 and 196 contain the identical phrase "by signing the birth certificate."

acknowledges the child is the father." *Id.* However, this statute is similarly unavailing because the plain language of that statute indicates that it only properly applies to cases involving "custody, visitation, and child support cases." *Id.* Although there is some argument for expansion of the section, the Court finds that it is not conclusive and as a result Howell may not use Article 196 to support her claims of presumption.[12]

### 3.     Article 197 and Applicable Evidence

Because Abigail is not a "child" for purposes of Article 3506(8), she must present other proof of her biological relationship to Philip. Under the Louisiana Civil Code, a child may bring an action to establish paternity no later than one year after the death of the father. La. Civ. Code art 197.[13] Under 197, where the action is commenced after the death of the alleged father, a child must prove paternity by "clear and convincing evidence." *Henderson*, 2012 WL at 3109482, at *3 (quoting Art. 197). Under Art. 197, "all relevant evidence is admissible to prove paternity for purposes of establishing to bring her claims under Louisiana tort law. *Id.* Examples of such relevant evidence include *blood tests*, an *informal acknowledgment*, and cohabitation of the mother and father at the time of conception." Art. 197, Revision Comment (c) (emphasis added).

In this case, the issue of paternity is still an issue of fact, and Defendants are entitled to collect evidence in support of their contention that Philip was not "biologically related" to Abigail. The "swab" test they propose to conduct is within the reasonable types of evidence allowable under

---

[12] Admittedly, the comments to this Article appear to expand its reach beyond these three categories of cases, as they state that "[t]he presumption created by this Article *applies generally* and is not restricted to issues of child support." Art. 196, comment (c) (emphasis added). "There is no . . . limitation . . . as to who may bring the action to rebut the presumption created by this Article." *Id.* at comment (d). Moreover the Louisiana Supreme Court has, in at least one case, interpreted the provisions of Article 196 in determining whether paternity had been established for purposes of a father's standing to bring a wrongful death suit. *See Udomeh*, 103 So.3d at 347 n.1. However, to date the Court has found no case which allows a child to establish standing through Article 196.

[13] "An illegitimate child plaintiff need not specifically plead a filiation action in a wrongful death and survival action claim; filiation is still an issue despite a lack of a formal caption in the complaint." *Harris v. New Orleans Police Dep't*, No. 11-752, 2013 WL 1335613, at *5 (E.D. La. Mar. 29, 2013) (citation omitted); *cf. Udomeh*, 103 So.3d 343, 348-49 (La. 2012) (finding that filing of wrongful death complaint by putative father was sufficient to raise avowal action, where complaint contained necessary facts to raise that action). Further, *Udomeh* noted that Comment (e) to Article 197 appeared to limit the reach of the statute to "succession matters only, " but nonetheless indicated that this was not intended to "eliminate a child's ability to cumulate actions." *Id.* at 352 & n.7.

Article 197.

### B. Defendants Challenge Paternity in This Case

#### 1. Entitlement to Rule 35(a) Examination

The next issue is whether Defendants are entitled to request a medical examination in order to challenge their assertion that Abigail has standing to bring this suit.[14]  The Court finds that based on the Rule 35(a) standards discussed above, evidence of paternity is plainly relevant to Howell's wrongful death and survivorship actions.  *See Smith*, 124 F.R.D. at 196.  Thus, Defendants are entitled to request that Abigail submit to a medical examination.

#### 2. Whether Defendants Have Shown "Good Cause"

The next issue is whether Defendants have demonstrated "good cause" to conduct the examination.  Rule 35(a) examinations, "like all other forms of discovery, are subject to the general provision of Rule 26(c) that the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R.D. 320, 323-24 (N.D. Ga. 2000) (citation omitted).  Courts elsewhere have been skeptical of vague requests to conduct Rule 35 medical examinations because "[b]y its very terms, Rule 35(a) does not afford a carte blanche right of . . . examination."  *In re Certain Asbestos Cases*, 112 F.R.D. 427, 434 (N.D. Tex. 1986) (finding that, in multi-plaintiff wrongful death case, plaintiff must plead specific facts entitling it to conduct autopsy of each plaintiff).  Instead, the Court must consider the information submitted by the mover which supports their entitlement to perform the examination.  *Schlagenhauf*, 379 U.S. at 118-19.

Here, Defendants fail to submit any documentation about what testing they propose.  They include no affidavit from the medical practitioner who they propose to perform the test, or any

---

[14]Federal Rule 35(a) is a procedural mechanism whose inquiry hinges on application of federal law. *Schlagenhauf*, 379 U.S. at 112-14; *Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 11-12 (1941); *Caban ex rel. Crespo v. 600 E. 21st Street Co.*, 200 F.R.D. 176, 178-79 (E.D.N.Y. 2001) (applying federal law to Rule 35(a) request for children to submit to psychological testing in diversity action).  Therefore, although the Court must apply Louisiana substantive law in order to establish that Abigail's biological relationship to Kliebert is "at issue" as a substantive matter for purposes of standing, once that determination is reached, those provisions are no longer relevant to determine whether Defendants are entitled to the discovery in this federal suit.

affidavit describing the process to be used. Under Local Rule 7.4, if a contested motion "requires consideration of facts not in the record, the movant must also file and serve upon opposing counsel a copy of all evidence supporting the motion." L.R. 7.4. Defendants' filing, as submitted, is in contravention of the Rule.

Nor is the Court reassured by the arguments posited in the motion itself. Defendants never indicate the scope of their proposed "examination." Instead, Defendants leave the scope of their intended examination of this child opaque. They refer to their proposed examination as a "DNA test" (R. Doc. 164-1, p. 2), an "examination to determine the paternity" of Abigail, *id.* at 4, a "physical examination" *id.* at 5, and a "medical examination to determine whether . . . a biological relationship exists between [Philip] and Abigail." *Id.* at 7. It is not clear what the appropriate scope of the these terms mean or how conflicts regarding the same should be resolved, and Defendants offer no proposals to meet their burden of showing the same. The Court notes that at her deposition Joffrion was asked whether Abigail had any learning difficulties or disabilities, and Joffrion testified that Abigail suffered from some "speech problems." (Joffrion Deposition, p. 73). Therefore, other elements of Abigail's medical and potentially psychological condition may remain at issue.[15]

However, at oral argument, Defendants represented that they wished to take a "swab" test, a relatively routine procedure, and also represented that the "swab" test would be used for purposes of determining Abigail's paternity. The Court limits Defendants to this test only.

The Court also finds that given Abigail's age and vulnerability, as well as the fact that the presence of additional persons will not impact the test, Howell and one of her counsel of record are entitled to be present when the "swab" test is taken. *Cf. In re Falcon Workover Co., Inc.*, 186 F.R.D. 352, 353-54 (E.D. La. 1999) (citing *Schlagenhauf*, and distinguishing between presence of third

---

[15]Moreover, the Court notes that the discovery stage of this case has involved questionable treatment of other interested parties by one of the three defendants - Avante - which has been acknowledged by both the undersigned and the presiding U.S. District Judge. *See* (R. Doc. 124, pp. 9-14) (detailing discovery conduct); *Howell v. Avante Services, LLC*, No. 12-293, 2013 WL 824715, at *4 (E.D. La. Mar. 6, 2013) ("It is worth noting that Avante's counsels' actions raise serious ethical concerns."). In that case, Avante ultimately sought to defend its actions against the injured third parties on the basis of linguistic interpretations so farfetched that at oral argument on a prior motion, counsel for Avante was reduced to arguing to the Court that he was "not playing games."

persons during psychological examinations and "vocational" examinations).  Howell or ordered to make Abigail available for testing no later than fourteen (14) days of the issuance of this Order.

### IV.     Conclusion

Accordingly,

**IT IS ORDERED** that Defendants, Avante Services, LLC, Sparrows Offshore, LLC, and Hilcorp Energy Company's, (collectively, "Defendants") **Joint Motion to Compel Medical Examination Under Fed R. Civ. P. 35 (R. Doc. 164)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff, Amy Howell, ("Howell") is to make Abigail Kliebert, ("Kliebert") available for a DNA "swab" test no later than fourteen (14) days of the issuance of this Order.

**IT IS FURTHER ORDERED** that if a test is authorized by the Court, both Howell and one of her attorneys of record may elect to be present at Abigail's examination.

New Orleans, Louisiana, this 9th day of April 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**