UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


AMY RICHARD HOWELL                          CIVIL ACTION

VERSUS                                      NO: 12-293

AVANTE SERVICES, LLC, *ET AL*.              SECTION: R


**ORDER AND REASONS**

Defendants Avante Services, LLC ("Avante"), Hilcorp Energy Company ("Hilcorp"), and Sparrows Offshore, LLC ("Sparrows") move for summary judgment on the grounds that plaintiff's negligence claims fail as a matter of law.[1] For the following reasons, defendants' motions are DENIED.

I.   BACKGROUND

Philip Kliebert died on April 18, 2011, after he fell through a large hole in the deck grating on Hilcorp's West Cameron 643-A platform ("platform"). Amy Richard Howell, Natural Tutrix of Kliebert's minor children, filed a wrongful death and survival action against Hilcorp, Avante, Alliance, and Sparrows.[2]

Hilcorp owned and operated the platform, which serviced 18 wellbores. At the time Kliebert's death, Hilcorp was in the process of plugging and abandoning the wellbores. Hilcorp

---

[1] R. Docs. 59, 63, 205. Sparrows adopted the extensive briefings of Avante and Hilcorp and adds none of its own arguments. R. Doc. 205.

[2] R. Doc. 1.

contracted for multiple companies to carry out the plug and abandonment operation. Avante was to manage the project and supervise operations, Sparrows was to operate the crane, and Alliance would provide the personnel. Accordingly, Kliebert was an Alliance employee.

The accident causing Kliebert's death occurred around 3:15 a.m. Besides Kliebert, Sparrows crane operator Scott Hargrave and Alliance employee Cory Lacoste were at the scene of the accident. The accident was described as follows:

> [T]he Sparrows crane operator was lifting a swivel stand to move it from the working hole in order to facilitate positioning of the casing jacks over the hole to remove the casing. When the Sparrows crane operator commenced the lift, the load swung away from Phillip Kliebert causing him to fall forward into the open hole in the deck created by the removal of the swivel stand.[3]

The movants claim that the hole at issue was "open and obvious" and therefore forecloses their liability. They move for summary judgment.[4]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the

---

[3] R. Doc. 1.

[4] Hilcorp also argues that it cannot be liable for the negligence of its independent contractors. R. Doc. 59-1 at 21. Hilcorp filed a separate motion for summary judgment on this issue, and this Court will address its argument in a separate Order. R. Doc. 57.

2

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). Further, the Court must draw reasonable inferences in favor of the nonmoving party. But "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting Wright & Miller, *Fed. Prac. and Proc. Civ.* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may

3

not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 332).

**III. DISCUSSION**

Defendants argue that they owed no duty to Kliebert because the opening in the deck grating was open and obvious.

The Outer Continental Shelf Lands Act, 43 U.S.C. § 1333, *et seq.*, applies to this dispute because plaintiff died on a fixed platform located on the Outer Continental Shelf, off the

4

Louisiana coast. The OCSLA directs the Court to apply the law of the state adjacent to the controversy to the extent that it is not inconsistent with other federal laws and regulations. *See* 43 U.S.C. § 1333(a)(2)(A); *Rodrigue v. Aetna Cas. and Sur. Co.*, 395 U.S. 352, 355 (1969). The parties have not cited, and the Court has not found, any federal law that conflicts with the Louisiana negligence principles that apply here. Accordingly, the Court applies Louisiana law to this dispute.

**A. Duty-Risk Analysis**

Plaintiff asserts claims under Louisiana's general negligence statute, La. C.C. art. 2315.[5] Louisiana courts conduct a duty-risk analysis to determine whether to impose liability under Article 2315. *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 632-633 (La. 2006). Under Louisiana law, "[t]he duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Lemann v. Essen Lane Daiquiris*, 923 So. 2d 627, 633 (La. 2006)). A plaintiff must prove each of five elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element);

---

[5] Hilcorp argues that plaintiff seeks to hold them liable under La. C.C. art. 2317 and 2322. Under all of these statues, Hilcorp maintains that it may not be held liable if the condition was not an unreasonable risk of harm. Hilcorp argues that a condition may not pose an unreasonable risk if its dangers are open and obvious to all. R. Doc. 59-1 at 14-15.

(2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). *Id. See also Knight v. Kellogg Brown & Root Inc.*, 333 Fed. App'x 1, 6 (5th Cir. 2009) (applying Louisiana law). A plaintiff's failure to prove any one of these elements results in a determination of no liability. *Knight,* 333 Fed. App'x at 6.

## B. Open and Obvious Hazards

Whether a defendant has breached a duty owed is a question of fact generally resolved by the jury, *see Monson v. Travelers Prop. & Cas. Ins. Co.*, 955 So. 2d 758, 761 (La. Ct. App. 2007) (citing *Mundy v. Dept. of Health and Human Res.*, 620 So. 2d 811 (La. 1993)), but the existence of such duty of care is a question of law. *See Laughlin v. Falcon Operators, Inc.*, 166 F. Supp. 2d 501, 504 (E.D. La. 2001); *Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 333 (5th. Cir. 1993)**.** Defendants argue they had no duty to protect Kliebert from falling into the hole because it was open and obvious.

Courts analogize the duty of an offshore platform occupier to that of a land owner. *George v. Nabors Offshore Corp.*, 464

6

Fed. App'x 298, 300 n.2 (5th Cir. 2012) (citing *Ellis v. Chevron U.S.A. Inc.*, 650 F.2d 94, 97-98 (5th Cir. 1981)). A landowner owes a duty to a plaintiff to discover any unreasonably dangerous conditions, and either to correct the condition or warn of its existence. *Socorro v. City of New Orleans*, 579 So. 2d 931, 939. (La. 1991). Nevertheless, "[i]t is accurate to state that defendants generally have no duty to protect against an open and obvious hazard." *Hutchinson v. Knights of Columbus, Council No. 5747*, 866 So. 2d 228, 234 (La. 2004). A landowner is not liable for an injury caused by "a condition which should have been observed by the individual in the exercise of reasonable care, or which was as obvious to a visitor as it was to the landowner." *Dauzat v. Curnest Guillot Logging Inc.*, 995 So. 2d 1184, 1186 (La. 2008). If the condition should be obvious to all, the condition is not unreasonably dangerous, and the defendant owes no duty to the plaintiff. *Id.*

   In considering a defendant's duty to a particular plaintiff, "consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person." *Walker v. Union Oil Mill Inc.*, 369 So. 2d 1043, 1047 (La. 1979). The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous. *Dauzat*, 995

So. 2d at 1186. Defendants argue that the evidence reveals that the hole was open and obvious to all. Accordingly, they argue that the hole was not unreasonably dangerous, and they owed no duty to Kliebert.

While the landowner analogy might fit for Hilcorp, the owner of the platform, the analogy seems incongruent with Avante's and Sparrows's role in this dispute. The Court is unconvinced that an "open and obvious" hole would preclude them from owing a duty to Kliebert. For example, if the crane operator's conduct caused Kliebert to be pulled over an open hole, then it is not obvious to the Court that Sparrrows, the crane operator, would be exonerated from a duty of care. Equally, if Avante's poor supervision of the crane operation caused the accident, they might also owe Kliebert a duty of care. Instead, the traditional duty analysis would apply. To determine whether to impose a duty in a particular situation, the court may consider various moral, social, and economic factors, including: 1) whether the imposition of a duty would result in an unmanageable flow of litigation; 2) the ease of association between the plaintiff's harm and the defendant's conduct; 3) the economic impact on society as well as the economic impact on similarly situated parties; 4) the nature of the defendant's activity; 5) moral considerations, particularly victim fault; 6) precedent; and 7) the direction in which society and its institutions are evolving.

*Meany v. Meany*, 639 So. 2d 229, 233 (La. 1994) (*citing Pitre*, 530 So. 2d at 1161). This inquiry requires consideration of the facts of each case, and summary judgment is proper "only where no duty exists as a matter of law and no factual or credibility disputes exist." *Parish v. L.M. Daigle Oil Co.*, 742 So. 2d 18, 25 (La. Ct. App. 1999). In any event, the Court will analyze whether the hole was open and obvious.

This is not a simple case of a person falling into an open hole. Instead, Kliebert and the other riggers were attempting a dangerous maneuver. Hilcorp described the accident as follows:

> The job task at the time was re-locating a power swivel stand from well no. A-2 to the side for the next scheduled phase in the well P&A process. As the crane lifted the stand, due to the crane not being centered over the lift, the stand lurched forward. The deceased was attempting to guide the stand away from the hole in the deck that the stand was over. When the stand lurched forward the deceased was pulled forward into the now open hole, being off balance the deceased fell through the now open hole to land on the A2 well caseing [sic] stub some 28 feet below, the impact resulted in massave [sic] head trauma as well as multiple broken bones."[6]

Defendants concede that the hole at issue was enlarged to install a blowout preventer. Specifically, instead of being two by four feet, this hole was four by seven feet.[7] Further, before the accident, the hole was covered by a power swivel. A power swivel

---

[6] R. Doc. 75-3 at 2.

[7] R. Doc. 244-7 at 6.

weighs about 10,000 pounds and is used for rotating casing.[8] Before the crane operator lifted the power swivel, this hole was "entirely covered" by the skid base of the power swivel.[9] The accident occurred at 3:30 a.m. and the riggers were using directional lighting.[10]

Although defendants point to evidence that Kliebert saw the hole before the accident, was told that it was cut bigger than usual, and received instructions about safety precautions when working around open holes, there are disputed issues of fact on the "open and obvious" issue.

For example, Alliance's Chris Cunningham testified that the hole was not obvious when the power swivel was covering it, that one would expect that there to be a hatch cover underneath the power swivel, and that one would probably not expect such a large hole.[11] He also testified that when Kliebert saw the hole days before the accident, it was covered in grating.[12] Further, Alliance employee Ian Trufant testified that the holes on the platform are usually much smaller and have hatch covers.[13]

---

[8] R. Doc. 73-7 at 15.

[9] R. Doc. 73-7 at 23.

[10] *Id.* at 31.

[11] R. doc. 244-3 at 18-20.

[12] *Id.* at 23.

[13] R. Doc. 244-7 at 6.

Avante's John Bevans testified that when he walked through the platform at 10:00 p.m. the night before the accident, there were no open holes and no hazardous conditions.[14] Sparrows crane operator Scott Hargrave testified: "I don't believe any of us knew the size of the hole."[15]

Next, the qualities of the hole, and the circumstances of the accident raise factual issues about whether it was open and obvious. For example, the lighting on the platform was problematic. The accident occurred at 3:30 a.m. and the lights "concentrated in two areas . . . [and] could create a significant shadowing effect across the main work deck."[16] Accordingly, there is a factual question about what a reasonable person could actually see at the time of the accident. Once the power swivel was removed, the lighting could have been inadequate to reveal the size of the hole. *See Champagne v. Nautical Offshore Corp.*, No. Civ.A. 01-3123, 2002 WL 31387134, at *2 (E.D. La. Oct. 22, 2002) ("[T]he Court finds that the size of the hole, its location, and the lighting of that location raise issues of material fact.").

Finally, defendants rely on cases that are distinguishable. In *George*, the Fifth Circuit affirmed summary judgment when

---

[14] R. Doc. 244-2 at 30.

[15] *Id.* at 6.

[16] R. Doc. 73-7 at 32.

plaintiff had tripped over coiled hoses. The Court held that "any reasonable person walking over the hoses would have realized their danger," and that "[t]he danger posed by heavy coiled hoses piled six to eight inches deep [was] 'obvious to all.'" *George*, 464 Fed. App'x at 300-01. Unlike *George*, there is evidence in the record that a reasonable person looking at the power swivel would not anticipate the danger posed by the big hole.

At this stage, the Court cannot conclude that the hole was open and obvious and that defendants owed Kliebert no duty with respect to the hazards it presented. Summary judgment is proper "only where no duty exists as a matter of law and no factual or credibility disputes exist." *Parish*, 742 So. 2d at 25.

**C. Avante's Breach**

Avante also argues that its employee John Bevans was not solely responsible for the supervision of the work, and that "[p]laintiff has failed to produce sufficient evidence to establish Avante's liability."[17] It is unclear how this fact would shield Avante from liability. In any event, this point is disputed as Avante testified that a well-site supervisor, such as Bevans, was responsible for placing barriers around open holes and for making sure that workers had fall protection.[18] Further, there is evidence in the record that Bevans "failed to conduct a

---

[17] R. Doc. 63-1 at 12.

[18] R. Doc. 73-4 at 13-14.

comprehensive JSA meeting that discussed the positioning required when lifting the load," that he failed to "insure the opening was properly marked," and that the riggers had fall protection."[19] Accordingly, plaintiff has submitted evidence as to Bevans's deficient conduct that would sustain Avante's liability.[20]

**IV. CONCLUSION**

Because disputed issues of material fact remain, defendants' motions for summary judgment are DENIED.

New Orleans, Louisiana, this 8th day of May, 2013.

*Sarah Vance*

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

[19] R. Doc. 73-7 at 47.

[20] Avante has abandoned their argument that Bevans was an independent contractor. R. Docs. 226; 231.